IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CT-3019-D

| | | |
|---|---|---|
| JEAN-CLAUDE RINEHART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| THEODIS BECK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Jean-Claude Rinehart ("Rinehart" or "plaintiff"), a state inmate, filed this action pursuant to 42 U.S.C. § 1983 [D.E. 1], asserting seven claims. On March 17, 2009, Rinehart filed an eighth claim alleging deliberate indifference to a serious medical need [D.E. 6]. On August 20, 2009, the court reviewed the complaint pursuant to 28 U.S.C. § 1915, dismissed plaintiff's request for declaratory and injunctive relief as moot, allowed plaintiff's claims to proceed to the extent plaintiff seeks monetary damages for alleged constitutional deprivations while Rinehart was incarcerated at Albemarle Correctional Institution, and directed plaintiff to particularize his complaint to name the "two unknown mail room workers" [D.E. 7]. On February 18, 2010, defendants answered the complaint [D.E. 26]. On March 5, 2010, Rinehart filed a response to the answer [D.E. 29]. On May 27, 2010, defendants filed a motion for summary judgment [D.E. 31]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Rinehart about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 34]. On September 17, 2010, after obtaining three extensions of time, Rinehart filed a response to the motion for summary judgment [D.E. 48].

Rinehart is a former state inmate[1] who spent a portion of his incarceration at Albemarle Correctional Institution ("ACI"). Compl. at 2. In response to defendants' motion for summary judgment, Rinehart withdrew claims V and VI, Pl.'s Br. in Resp. at 40; therefore, six claims remain. Briefly, Rinehart challenges the following ACI and North Carolina Department of Corrections ("DOC") policies and actions: (1) an ACI policy which, with one limited exception, prohibits inmates from possessing disposable razors (claim I); (2) a policy which assesses a $10 administrative fee against an inmate's trust account when he is found guilty of a disciplinary infraction (claim II); (3) a policy which assesses medical co-pays against an inmate's trust account for certain non-emergency medical care (claim III); (4) the opening by ACI staff of several pieces of Rinehart's legal mail (claim IV); (5) the denial of any medical gain time credit while Rinehart was unable to work due to a knee injury (claim VII); and, (6) the refusal by an ACI nurse to administer cough syrup to Rinehart despite a prescription from an ACI prison doctor (claim VIII). Rinehart seeks compensatory and punitive damages, as well as declaratory and injunctive relief. Compl. at 41–42. As explained below, the court grants defendants' motion for summary judgment.

I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but

---

[1] Rinehart was released from incarceration on September 29, 2010. See N.C. Dep't of Corr., Offender Public Information, http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0344905 (last visited January 4, 2011); see also D.E. 50 (10/18/10 letter from Rinehart).

2

"must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted and emphasis removed).

In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

A.

First, Rinehart's challenges ACI's disposable razor policy. ACI participates in a "pilot program in which . . . inmates . . . are not allowed to possess razors or razor blades. Shaves are provided by prison barbers, using electric shavers whose blades are disinfected between each use." Hunsucker Aff. ¶ 2; see also Compl. at 22–26 (plaintiff's allegations challenging the razor policy). The DOC developed the program in order to eliminate disposable razors as a potential weapon in North Carolina's prisons.[2] See Hunsucker Aff., Att. 1 at 2 (DOC document explaining reasons for developing electric shave program). When ACI implemented the policy, it gave all inmates approximately thirty days to dispose of their personal razors or "mail them out at [inmate] expense."

---

[2] Rinehart contends there is no basis for implementing the program at "ACI, a medium custody facility[,]" and notes that defendants "offer no documented evidence of any such violence at ACI[.]" Pl.'s Br. in Resp. at 4. However, regardless of whether inmates have used razors in attacks at ACI does not undermine DOC's legitimate security concerns regarding the safety of disposable razors in prisons. See, e.g., Gerber v. Sweeney, 292 F. Supp. 2d 700, 710 n.11 (E.D. Pa. 2003); see also Hunsucker Aff., Att. 4 (6/16/08 inquiry from director of Stanly County Health Department into "the protocol that is being used to assure safe, sanitized use of the trimmers[;]" noting "I can certainly understand a correctional institution not wanting razors (and the potential risks associated with them as weapons) in your facility").

3

Hunsucker Aff., Att. 3 (5/2/08 memo from Hunsucker to ACI inmates). Rinehart "was ordered by threat of illegal sanctions to destroy . . . (15) new Bic disposable razors [and] (1) Schick razor with four cartridges – total value approximately $15" which he had "legally purchased in prison canteens[.]" Compl. at 25. Although ACI requires "inmate barbers to ensure all blades are cleaned and disinfected between each shave" with a product that "is EPA registered as being effective against" many communicable diseases, Hunsucker Aff., Atts. 2 and 5 (documents describing the policy and disinfectant used), Rinehart alleges that he contracted a "staph infection from non-sterile clippers" in the ACI barbershop, Compl. at 26. Defendants dispute that Rinehart was diagnosed with a staph infection and have submitted an affidavit from an ACI doctor who treated Rinehart. The doctor diagnosed Rinehart with cellulitis which "can be caused by a variety of bacteria" and states that he "ha[s] no reason to believe that [plaintiff's] infection resulted from being shaved with electric razors by prison barbers . . . ." Hassan Aff. ¶ 3 and Att. at 1 (Hassan's notes from 11/18/08 medical consultation with Rinehart).

Rinehart asserts that the razor policy violates his First Amendment right to freedom of religion because he "fears use of unit barbershop due to health risks . . . hence his only alternative is conversion to Islam" in order to meet the policy's limited exception[3] permitting Islamic adherents to use disposable razors. Compl. at 24. Rinehart also asserts that, in requiring inmates to discard or otherwise get rid of their disposable razors, ACI seized property in violation of Rinehart's Fourth Amendment rights and unconstitutionally deprived him of property without due process of law in violation of the Fifth and Fourteenth Amendments. Id. at 24–25. Finally, Rinehart asserts that the

---

[3] Defendants acknowledge that "a limited exception has been made for inmates whose Islamic religion requires them to shave certain areas of bodily hair every 40 days for reasons of religious hygiene" but explain that "such inmates are provided with a razor immediately before shaving and must turn it in immediately afterwards." Hunsucker Aff. ¶ 2 and Att. 6 (8/20/08 memo from Hunsucker to ACI inmates describing shaving procedure for Islamic inmates).

use of non-disinfected clippers, which caused him to contract an infection, constitutes cruel and unusual punishment in violation of the Eighth Amendment. Id. at 25–26.

In order to respect Rinehart's right to practice the religion of his choice, "a [prison policy] must have a secular purpose; the primary effect of the [policy] must be one that neither advances nor inhibits religion; and finally, the [policy] must not foster an excessive government entanglement with religion." Mellen v. Bunting, 327 F.3d 355, 372 (4th Cir. 2003) (finding that daily "supper prayer" at state-operated military college violates the Establishment Clause of the First Amendment) (citing Lemon v. Kurtzman, 403 U.S. 602, 612–13 (1971); see also Lambeth v. Bd. of Comm'rs of Davidson Cnty., N.C., 407 F.3d 266, 268 (4th Cir. 2005) (noting that Establishment Clause challenges are "properly analyzed . . . under the Lemon test"). Because the challenged razor policy complies with the Lemon test, the court grants summary judgment to defendants on Rinehart's First Amendment claim.

As for Rinehart's Eighth Amendment claim, a plaintiff must show prison officials acted with deliberate indifference toward a substantial risk of harm. See, e.g., Farmer v. Brennan, 511 U.S. 825, 837 (1994); Estelle v. Gamble, 429 U.S. 97, 104 (1976); Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). In light of the governing standard, Rinehart's Eighth Amendment claim also fails. See, e.g., Lee v. Birkett, No. 09-10723, 2010 WL 1131485, at *5 (E.D. Mich. Feb. 18, 2010) (unpublished), report and recommendations adopted, No. 09-10723, 2010 WL 1131486 (E.D. Mich. Mar. 22, 2010) (unpublished); see also Dale v. Slyhuis, 313 F. App'x 917, 918 (8th Cir. 2009) (per curiam) (unpublished); Gerber, 292 F. Supp. 2d at 710; DeBlasio v. Johnson, 128 F. Supp. 2d 315, 331 (E.D. Va. 2000); Ashann-Ra v. Commw. of Va., 112 F. Supp. 2d 559, 573 (W.D. Va. 2000).

Finally, with regard to Rinehart's assertion that ACI's implementation of the razor policy unconstitutionally seized property belonging to him, "an unauthorized intentional deprivation of

5

property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). In this case, an adequate post-deprivation remedy is available to Rinehart. See, e.g., Wilkins v. Whitaker, 714 F.2d 4, 6–7 (4th Cir. 1983) (affirming summary judgment against prisoner alleging deliberate property deprivation in a § 1983 action because prisoner could bring post-deprivation action for conversion in North Carolina state court). Because Rinehart has a meaningful post-deprivation remedy available in state court, this claim fails.

B.

Next, Rinehart challenges DOC's policy of assessing a $10 administrative fee against an inmate's trust account when he is found guilty of a disciplinary infraction.[4] In response, defendants rely on the decision of another court in this district upholding the fee. See Cassell v. Norris, No. 5:02-CT-943-H (E.D.N.C. Apr. 18, 2003) (unpublished), aff'd, 84 F. App'x 291 (4th Cir. 2003) (per

---

[4] The court questions whether the claim is even cognizable under section 1983. Notably, Rinehart appears to challenge the validity of the punishment imposed rather than the procedures used at his disciplinary hearing. To recover money damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a plaintiff must show that the underlying conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. See, e.g., Heck v. Humphrey, 512 U.S. 477, 486–87 (1994); Edwards v. Balisok, 520 U.S. 641, 643, 648 (1997) (extending Heck to inmate disciplinary convictions). Although Heck does not apply to all suits challenging prison disciplinary proceedings, see Muhammad v. Close, 540 U.S. 749, 751, 755 (2004) (per curiam) ("Heck's requirement to resort to state litigation and federal habeas before § 1983 is not [] implicated by a prisoner's challenge that threatens no consequence for his conviction"), Rinehart asks the court to declare the administrative fee unconstitutional. Accordingly, Rinehart is challenging the validity of his disciplinary conviction. Because Rinehart's disciplinary conviction has not been overturned or otherwise invalidated, Rinehart may not proceed with his challenge to the administrative fee until the disciplinary conviction he challenges has been overturned or otherwise invalidated. See Harris v. SCDC, No. 8:08-22-GRA, 2008 WL 4616773, at *7 (D.S.C. Oct. 16, 2008) (unpublished); Battle v. Eagleton, No. 8:07-CV-1841-GRA-BHH, 2008 WL 2952349, at *5 (D.S.C. July 28, 2008) (unpublished).

6

curiam) (unpublished). This court agrees with the conclusion in Cassell, and rejects this claim. See id.; see also Bodie v. North Carolina, No. 3:06-CV-197-MU, 2006 WL 1215766, at *1 (W.D.N.C. May 3, 2006). Thus, summary judgment for defendants on this claim is appropriate.

In opposition, Rinehart cites Sell v. Parratt, 548 F.2d 753 (8th Cir. 1977). In Sell, prisoners challenged a state prison policy which "immediately seized and summarily confiscated without hearing" any currency found in their possession on the grounds that inmates were prohibited from possessing currency, and paid the forfeited funds into a general Inmates Welfare Fund. Id. at 754. The Eighth Circuit held "as a matter of Nebraska law an administrative agency of the state, . . . may not forfeit property used or possessed in violation of agency rules and regulations unless the power to effect such a forfeiture is expressly, or at least by fair implication, conferred by the statutes of the state . . . ." Id. at 758.

> Here, the administrative fee is not a forfeiture of property, but a disciplinary measure.
>
> "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.

Whitley v. Albers, 475 U.S. 312, 321–22 (1986) (quoting and citing Bell v. Wolfish, 441 U.S. 520, 547 (1979)). Thus, Sell does not help Rinehart, and the court grants defendants' motion for summary judgment on this claim.

C.

Next, Rinehart challenges DOC's medical co-pay policy. In response, defendants rely on the decision of another court in this district upholding the co-pays. See Husketh v. Beck, No. 5:02-

CT-465-H (E.D.N.C. Aug. 26, 2002) (unpublished), aff'd, 55 F. App'x 157 (4th Cir. 2003) (per curiam) (unpublished). This court finds Husketh persuasive, and concludes that summary judgment for defendants on this claim is appropriate. See also Williams v. Smith, No. 1:10-CV-501, 2010 WL 2816714, at *2 (M.D.N.C. July 15, 2010) ("co-pay fees for medical treatment in jails and prisons are generally constitutional").

D.

Next, Rinehart alleges that on four occasions, ACI mail room staff opened his legal mail outside his presence. Pl.'s Br. in Resp. at 34. Defendants concede that these events happened, but still seek summary judgment. Defs.' Br. Supp. Mot. Summ. J. at 3.

Legal mail may not be opened outside of the presence of the prisoner-addressee. See Wolff v. McDonnell, 418 U.S. 539, 575 (1974). However, to state a claim for a constitutional violation, a plaintiff must show actual injury by the opening. Lewis v. Casey, 518 U.S. 343, 352–54 (1996). In order to show the actual injury, an inmate must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Id. at 353. Rinehart contends that the mail opening related to a "petition [which] was the beginning of an ongoing litigation process [related to his razor claim] whos' [sic] end result is part of THIS action." Pl.'s Br. in Resp. at 37; see also 9/13/10 Rinehart Aff. ¶ 16 ("defendants . . . . intercepted litigation documents against them pertaining to Claim I; said litigation included a 'Petition for Writ of Mandamus' which was appealed up to and including the NC Supreme Court"). Rinehart also contends that "[t]hese instances [of opening his mail] create a pervasive fear that his rights to access to the courts, through petitions for redress of grievances, may never be heard." Pl.'s Br. in Resp. at 35.

Rinehart's own evidence demonstrates that he has been able to pursue his challenge to ACI's razor policy, and he has not suffered any harm from the opening of his legal mail. Additionally,

8

Rinehart's fear that other unspecified future grievances may not reach the courts due to interference by ACI mail room staff is "hypothetical or abstract" and therefore not ripe for adjudication. See, e.g., Ostergren v. Cuccinelli, 615 F.3d 263, 287–88 (4th Cir. 2010).

In addition to failing to show injury, Rinehart does not allege any facts to show that these four events are anything other than isolated incidents. Isolated incidents of mail mishandling do not rise to the level of a constitutional violation. See, e.g., Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) ("an isolated incident of mail tampering is usually insufficient to establish a constitutional violation."); Pearson v. Simms, 345 F. Supp. 2d 515, 519–20 (D. Md. 2003) (finding that "occasional incidents of delay or non-delivery of mail" are not actionable under section 1983), aff'd, 88 F. App'x 639 (4th Cir. 2004) (per curiam) (unpublished); see also Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) (suggesting that isolated incidents of opening mail does not state a cognizable section 1983 claim). Because Rinehart has failed to allege that the opening of his legal mail caused an actual injury or that it was anything more than isolated incidents, the court grants summary judgment to defendants on this claim.

E.

Next, Rinehart challenges his loss of any gain time credit while he was unable to work due to a knee injury.[5] However, the evidence demonstrates that Rinehart failed to exhaust his administrative remedies (or even to file a grievance) on this claim until after he filed this action. See Myers Aff. (attaching all grievances filed by Rinehart while incarcerated at ACI); Pl.'s Resp. to

---

[5]The court questions whether this claim may even be brought under section 1983. See, e.g., Blackwell v. Bennett, No. 1:08-CV-526, 2009 WL 3261640, at *1 (W.D.N.C. Oct. 8, 2009) (dismissing section 1983 complaint "to the extent [the plaintiff] is alleging a claim that Defendants . . . have violated his constitutional rights by failing to award him with disability-based sentence reduction credits, [because] that claim sounds in habeas and is not cognizable in this civil rights action").

9

Defs.' Answer, Att. 1-M (11/18/09 grievance alleging that "NC DOC's medical authority has twice denied me medical unfit status which has prevented me from earning medical gain time").[6] The Prison Litigation Reform Act of 1995 ("PLRA") requires inmates to exhaust administrative remedies before filing suit to challenge the conditions of their confinement. See 42 U.S.C. § 1997e(a). Therefore, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see Jones v. Bock, 549 U.S. 199, 211 (2007). Moreover, a prisoner must exhaust administrative remedies regardless of the relief offered through administrative procedures. See Booth v. Churner, 532 U.S. 731, 741 (2001). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones, 549 U.S. at 211; see Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 677 (4th Cir. 2005). The exhaustion process ensures that "prison officials have been given an opportunity to address the claims administratively," before the prisoner files suit. Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Filing suit before exhausting administrative remedies dooms the claim. See, e.g., Ford v. Johnson, 362 F.3d 395, 398 (7th Cir. 2004) ("To prevent this subversion of efforts to resolve matters out of court, it is essential to keep the courthouse doors closed until [administrative procedures] have

---

[6] In opposition to the motion for summary judgment, Rinehart cites a grievance he filed on November 7, 2008, in a "good faith effort at complying with PLRA requirements." Pl.'s Br. in Resp. at 44 (citing Compl., Att. 1-I). However, that grievance challenges "the following issues: personal hygene [sic], legal mail, disciplinary administration fee, medical co-pay, confiscation of personal property, inadequate/improper cleaning supplies and ETS (Environmental Tobacco Smoke)." Compl., Att. 1-I (11/7/08 grievance). Thus, Rinehart did not file a grievance concerning medical gain time until November 18, 2009, almost ten months after filing this action.

run their course."); Johnson v. Jones, 340 F.3d 624, 627–28 (8th Cir. 2003).

When an inmate files suit early, courts typically dismiss the claim without prejudice. See, e.g., Ford, 362 F.3d at 401; Johnson v. Cannon, No. 4:08-776-PMD, 2010 WL 936706, at *8 (D.S.C. Mar. 15, 2010) (unpublished); Stokes v. Moore, No. 5:08-CT-3045-FL, slip op. at 4 (E.D.N.C. Jan. 29, 2010) (unpublished); Shouse v. Madsen, No. 7:09-CV-00461, 2010 WL 276543, at *1 (W.D. Va. Jan. 19, 2010) (unpublished). A dismissal without prejudice allows the prisoner an opportunity to exhaust the administrative process and then file a new suit, if the prisoner so chooses. However, because Rinehart has been released from custody, this claim is moot and must be dismissed. See, e.g., James v. Outlaw, 142 F. App'x 274, 275 (8th Cir. 2005) (per curiam) (unpublished); Johnson v. Riveland, 855 F.2d 1477, 1481–82 (10th Cir. 1988).

F.

Finally, Rinehart alleges that an ACI nurse Debra B. Morris refused to administer cough syrup to Rinehart despite a prescription from an ACI prison doctor. In response, defendants have produced evidence indicating that Nurse Morris did provide Rinehart with the cough syrup, and that any failure to administer cough syrup to Rinehart "would have had at most a minor effect on Rinehart's comfort level . . . and a negligible effect on his underlying medical problem." Hassan Aff. ¶ 4; see also Morris Aff. ¶ 2; Kimble Aff. ¶ 2.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. Estelle, 429 U.S. at 104; see Bell, 441 U.S. at 535 n.16 (1979). In order to prove such a claim, Rinehart "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." Iko, 535 F.3d at 241 (quoting Estelle, 429 U.S. at 104). In cases involving the denial of or the delay in providing medical treatment to a prisoner, the prison official must know of and disregard an objectively serious condition, medical need, or risk of harm.

11

See, e.g., id.; Sosebee v. Murphy, 797 F.2d 179, 182–83 (4th Cir. 1986).

Regardless of whether Morris actually provided the cough syrup to Rinehart, Rinehart has failed to show that his medical condition was objectively serious. The record demonstrates that Rinehart's claim derives from his history of personal disagreements with Morris and is an attempt to expose some "facility wide conspiracy with improprieties at every level[,]" Pl.'s Br. in Resp. at 47, rather than the result of any actual harm he suffered from being denied cough syrup. See, e.g., Pl.'s Mot. to Amend at 6 ("Plaintiffs [sic] troubles with Nurse Morris span a three month period from November 2008 to January 2009" and "numerous complaints lodged . . . to no avail") & Ex. J (12/4/08 letter from plaintiff stating "On three occasions over the past month I have been seen by Nurse Debra B. Morris and in every instance she has been rude, belligerent and disrespectful . . . ."); Pl.'s Br. in Resp. at 47–51 (questioning the circumstances under which Morris responded to plaintiff's grievance and the veracity of Morris's grievance response and affidavit and "mov[ing] the court to reject Nurse Morris [sic] affidavit because she has clearly perjured herself and sanction her as deemed appropriate") & 56 ("Plaintiff through numerous attempts, made it known that Nurse Morris was acting with deliberate indifference towards him all of which culminated into a situation where he was subjected to undue pain and suffering . . . ."). Although Rinehart vaguely asserts that "there is no question as to the seriousness of ones medical needs where the lungs are concerned" and states that Morris' actions caused unspecified "undue pain and suffering[,]" Pl.'s Br. in Resp. at 53, 55, Rinehart does not even make an attempt to show that any failure to administer him cough syrup actually harmed him. Furthermore, Rinehart does not appear to dispute that he received the additional medications prescribed to him in conjunction with the cough syrup. Hassan Aff. ¶ 4 ("I prescribed (among other medications) Robitussin DM (a cough suppressant and expectorant . . . )");Pl.'s Br. in Resp. at 52–53 (in addition to the cough syrup, "Hassan . . . also prescribed steroids

and the antibiotic, cleocin .... to work together"). Thus, any failure to administer cough syrup to Rinehart did not violate the Eighth Amendment.

II.

As explained above, the court GRANTS defendants' motion for summary judgment [D.E. 31]. The Clerk of Court is directed to close the case.

SO ORDERED. This 4 day of January 2011.

JAMES C. DEVER III
United States District Judge

13

Case 5:09-ct-03019-D   Document 51   Filed 01/05/11   Page 13 of 13